In the Matter of DELAWARE COUNTY ELECTRIC COOPERATIVE, INC., Appellant, against CITY OF NEW YORK et al., Respondents.

Argued March 10, 1952; decided June 5, 1952.

*Francisco Penberthy* and *Milton D. Nelson* for appellant. I. The lease does not preclude the claim of Cooperative nor deny it the damages to which it is entitled under title K of the Administrative Code, the Constitution of the United States or the Constitution and laws of the State. The precise language of the lease restricts and limits the release provisions of paragraphs 11 and 12 and each and all of the other terms and conditions of the lease exclusively to the demised eight crossings. II. It was not the purpose or intention of the lease to give an unlimited future general release. (Restatement, Contracts, § 236, cl. [b].) III. The specific language of paragraphs 11 and 12, whether read in or out of context, provides only for a limited release on the leased crossings. (3 Williston on Contracts, § 618, pp. 1779–1780; Restatement, Contracts, § 235, cl. [c]; *Empire Properties Corp.* v. *Manufacturers Trust Co.,* 288 N. Y. 242; *Halsted* v. *Globe Ind. Co.,* 258 N. Y. 176; *Matter of Gillespie [Central Hudson Gas & Elec. Corp.],* 263 App. Div. 175, 288 N. Y. 514; *Matter of Bensel,* 140 App. Div. 806; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439; *Matter of Board of Water Supply of City of N. Y.,* 211 N. Y. 174; *Matter of City of New York* v. *Loomis,* 199 Misc. 915; *Haskell* v. *Miller,* 221 App. Div. 48, 246 N. Y. 618; Williston on Contracts [Rev. ed.], § 619; *Mitchell* v. *Mitchell,* 170 App. Div. 452; *Kirchner* v. *New Home Sewing Mach. Co.,* 135 N. Y. 182; *Simon* v. *Etgen,* 213 N. Y. 589.) IV. The future release contended for by the city is not favored by the courts and as such should be given no effect or be most strictly construed. (*McCabe* v. *New York Central & H. R. R. R. Co.,* 139 App. Div. 698; *Heuman* v. *Powers Co.,* 226 N. Y. 205; *White* v. *Southern Ry. Co.,* 142 S. C. 284.) V. The future " release " claimed by the city does not preclude Cooperative's claim since the city kept Cooperative in ignorance of its intention. (*Lee* v. *Guardian Life Ins. Co. of America,* 187 Misc. 221, 267 App. Div. 985; *Kirchner* v. *New Home Sewing Mach. Co.,* 135 N. Y. 182; *Insurance Co. of North America* v. *Whitlock,* 216 App. Div. 78.)

VI. The interpretation of the lease urged by Cooperative should be adopted rather than that of the city since it was drafted by the city and language will be interpreted most strongly against the party using it. (*Taylor* v. *United States Cas. Co.,* 269 N. Y. 360; *Hartol Products Corp.* v. *Prudential Ins. Co.,* 290 N. Y. 44; *Bushey & Sons* v. *American Ins. Co.,* 237 N. Y. 24; *Bristol* v. *Cornell Univ.,* 237 App. Div. 771; *Novak & Rehner* v. *State of New York,* 192 Misc. 66; *Lee* v. *Guardian Life Ins. Co. of America,* 187 Misc. 221, 267 App. Div. 985.) VII. The court could and should reform the lease, if necessary, to give effect to the true intent and enforce the same as if it were reformed without the necessity of having a separate reformation proceeding. (*Nellis* v. *Western Life Ind. Co.,* 207 N. Y. 320; *Maher* v. *Hibernia Ins. Co.,* 67 N. Y. 283; *Susquehanna S. S. Co.* v. *Andersen & Co.,* 239 N. Y. 285; *Lewitt & Co.* v. *Jewelers' Safety Fund Soc.,* 249 N. Y. 217; *MacDonald* v. *Crissey,* 215 N. Y. 609; *Albany City Sav. Inst.* v. *Burdick,* 87 N. Y. 40; *Bacot* v. *Fessenden,* 139 App. Div. 647; *Manheimer* v. *Kuhn,* 173 App. Div. 135; *Le Gendre* v. *Scottish Union & Nat. Ins. Co.,* 95 App. Div. 562.)

*Denis M. Hurley, Corporation Counsel* (*Francis T. Murray, Seymour B. Quel* and *Robert E. Hugh* of counsel), for respondents. I. All claims under title K were released. Moreover, claims of the types and in the towns enumerated could not arise under title K in respect to petitioner's line on the leased locations but only in respect to its lines located on additional lands as the same were acquired. Accordingly, the intention to release as to all of petitioner's lines in the taking area is obvious and was properly given effect. (*Murphy* v. *City of New York,* 190 N. Y. 413; *Brooklyn City R. R. Co.* v. *Kings Co. Trust Co.,* 214 App. Div. 506, 242 N. Y. 531; *Stewart* v. *Barber,* 182 Misc. 91.) II. The intention of the parties to release all claims in respect to petitioner's lines on lands in the reservoir area '' when, as and if '' such lands were acquired by the city, being expressed in unambiguous language leaving no fair reason for doubt as to its meaning, there is no room for construction, and the language of the agreement is controlling and must be given effect. (*Gans* v. *Ætna Life Ins. Co.,* 214 N. Y. 326; *Foot* v. *Ætna Life Ins. Co.,* 61 N. Y. 571; *Dwight* v. *Germania Life Ins. Co.,* 103 N. Y. 341.) III. Where the language of a contract

is clear and unambiguous, its meaning is to be determined by the language alone, and without regard to extraneous facts. (*Nau* v. *Vulcan Rail & Constr. Co.*, 286 N. Y. 188; *St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 235 N. Y. 30; *De Angelis* v. *White-All Corp.*, 273 App. Div. 873, 893.) IV. No question of reformation of the lease was presented to, passed upon by, or affected the decision of, the court below and accordingly is not involved on the present appeal.

DYE, J. By written lease dated December 13, 1945, the City of New York granted to the Delaware County Electric Cooperative, Inc., the right to construct and operate its electric transmission and distribution lines and appurtenances for a term of ten years, unless sooner terminated on ninety days' notice of cancellation, over lands it had acquired from the Delaware & Northern Railroad Company and no longer used by it for railroad purposes. These lands were within the Delaware Water Plan and located in the part thereof described as the Pepacton Dam and Reservoir on the east branch of the Delaware River in the towns of Colchester and Andes, Delaware County. The premises described consisted of eight designated locations crossing the unused railroad right of way. The lease recited that " The premises herein demised shall be subject to the following terms and conditions " which were set out in 13 separately numbered paragraphs, none of which concern us here except insofar as they reflect light on the scope and meaning attributable to the release provisions numbered 11 and 12 which, for convenience, are quoted, viz.:

" 11. The Tenant hereby remises, releases and forever discharges the City and the Landlord of and from any and all claims and cause or causes of action whatsoever, which it has, or which it or its successors or assigns may hereafter have under the provisions of Title K of said Administrative Code, if, as and when the City shall acquire any additional lands for water supply purposes in said Towns of Colchester, Andes and Middletown, and the Tenant agrees that, notwithstanding any provision of any general, special or local law or any charter and particularly the provisions of said Title K, the City shall not be required to

" (a) Provide a substitute right of way for its electric transmission and distribution lines and appurtenances;

" (b) Relocate said lines and appurtenances;

" (c) Permit the perpetual use of the premises herein demised and said additional lands for said lines and appurtenances;

" (d) Compensate the Tenant for any expense, loss or damages caused by reason of removing and relocating said lines and appurtenances.

" 12. The Tenant covenants, at its own cost and expense, if, as and when the City shall acquire said additional land for water supply purposes in said Towns of Colchester, Andes and Middletown, to remove said electric transmission and distribution lines, and their appurtenances, notwithstanding any provision of any general, special or local law or any charter and particularly the provisions of said Title K."

When the city, at a subsequent date prior to the termination of the lease, instituted condemnation proceedings pursuant to title K of chapter 41 of the Administrative Code of the City of New York (L. 1937, ch. 929) to acquire other lands on which were already located electric lines and facilities belonging to the petitioner, the latter filed a claim for resulting loss. This the city rejected on the theory that the subject matter had therefore been released by the petitioner under the lease provisions above quoted. The Appellate Division accepted this view, reversed the order of the Supreme Court which had directed the city to have the petitioner's claim heard and determined, and dismissed the claim.

We cannot agree that the release was intended to cover premises other than the premises demised. The lease must be read as a whole and in connection with title K of the Administrative Code, pursuant to which it had been executed. When so read, it becomes manifestly clear that the enunciated conditions including the release clauses, had reference only to the electric lines and appurtenances belonging to the petitioner thereafter installed on the demised premises and that the phrase " if, as and when the City shall acquire any additional lands for water supply purposes " had reference only to the time when the release was to become effective. That time was when, if ever, the old railroad right of way was actually needed for the construction of the Pepacton Reservoir, and the tenant was required

" to remove *said* electric transmission and distribution lines, and their appurtenances " (emphasis supplied). It was then that the city was to be released from any claims to " relocate " and to " provide a substitute right of way " for the " said " electric lines erected by the petitioner on the demised locations. When so read, it is clear that the release clauses are limited in scope and meaning to the premises demised.

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, FULD and FROESSEL, JJ., concur.

Ordered accordingly.