304 N.Y. 196 (1952)
In the Matter of Delaware County Electric Cooperative, Inc., Appellant,
v.
City of New York et al., Respondents.
Court of Appeals of the State of New York.
Argued March 10, 1952.
Decided June 5, 1952
Francisco Penberthy and Milton D. Nelson for appellant.
Denis M. Hurley, Corporation Counsel (Francis T. Murray, Seymour B. Quel and Robert E. Hugh of counsel), for respondents.
LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, FULD and FROESSEL, JJ., concur.
*200 DYE, J.
By written lease dated December 13, 1945, the City of New York granted to the Delaware County Electric Cooperative, Inc., the right to construct and operate its electric transmission and distribution lines and appurtenances for a term of ten years, unless sooner terminated on ninety days' notice of cancellation, over lands it had acquired from the Delaware & Northern Railroad Company and no longer used by it for railroad purposes. These lands were within the Delaware Water Plan and located in the part thereof described as the Pepacton Dam and Reservoir on the east branch of the Delaware River in the towns of Colchester and Andes, Delaware County. The premises described consisted of eight designated locations crossing the unused railroad right of way. The lease recited that "The premises herein demised shall be subject to the following terms and conditions" which were set out in 13 separately numbered paragraphs, none of which concern us here except insofar as they reflect light on the scope and meaning attributable to the release provisions numbered 11 and 12 which, for convenience, are quoted, viz.:
"11. The Tenant hereby remises, releases and forever discharges the City and the Landlord of and from any and all claims and cause or causes of action whatsoever, which it has, or which it or its successors or assigns may hereafter have under the provisions of Title K of said Administrative Code, if, as and when the City shall acquire any additional lands for water supply purposes in said Towns of Colchester, Andes and Middletown, and the Tenant agrees that, notwithstanding any provision of any general, special or local law or any charter and particularly the provisions of said Title K, the City shall not be required to
*201
"(a) Provide a substitute right of way for its electric transmission and distribution lines and appurtenances;
"(b) Relocate said lines and appurtenances;
"(c) Permit the perpetual use of the premises herein demised and said additional lands for said lines and appurtenances;
"(d) Compensate the Tenant for any expense, loss or damages caused by reason of removing and relocating said lines and appurtenances.
"12. The Tenant covenants, at its own cost and expense, if, as and when the City shall acquire said additional land for water supply purposes in said Towns of Colchester, Andes and Middletown, to remove said electric transmission and distribution lines, and their appurtenances, notwithstanding any provision of any general, special or local law or any charter and particularly the provisions of said Title K."
When the city, at a subsequent date prior to the termination of the lease, instituted condemnation proceedings pursuant to title K of chapter 41 of the Administrative Code of the City of New York (L. 1937, ch. 929) to acquire other lands on which were already located electric lines and facilities belonging to the petitioner, the latter filed a claim for resulting loss. This the city rejected on the theory that the subject matter had therefore been released by the petitioner under the lease provisions above quoted. The Appellate Division accepted this view, reversed the order of the Supreme Court which had directed the city to have the petitioner's claim heard and determined, and dismissed the claim.
We cannot agree that the release was intended to cover premises other than the premises demised. The lease must be read as a whole and in connection with title K of the Administrative Code, pursuant to which it had been executed. When so read, it becomes manifestly clear that the enunciated conditions including the release clauses, had reference only to the electric lines and appurtenances belonging to the petitioner thereafter installed on the demised premises and that the phrase "if, as and when the City shall acquire any additional lands for water supply purposes" had reference only to the time when the release was to become effective. That time was when, if ever, the old railroad right of way was actually needed for the construction of the Pepacton Reservoir, and the tenant was required *202 "to remove said electric transmission and distribution lines, and their appurtenances" (emphasis supplied). It was then that the city was to be released from any claims to "relocate" and to "provide a substitute right of way" for the "said" electric lines erected by the petitioner on the demised locations. When so read, it is clear that the release clauses are limited in scope and meaning to the premises demised.
The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs in this court and in the Appellate Division.
Ordered accordingly.